Terminate as moot.
SO ORDERED.
Dated: 7/18/2022

*P. Kevin Castel*
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

PEDRO LOPEZ,
GIOVANNI MARTINEZ, and
VERONICA NIEVES,

         Defendants.

21 Cr. 234 (PKC)

## MOTIONS IN LIMINE OF THE UNITED STATES OF AMERICA

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Jun Xiang
Micah F. Fergenson
Assistant United States Attorneys
   *Of Counsel*

# TABLE OF CONTENTS

BACKGROUND .................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.    Evidence of Lopez's 2012 Drug Trafficking Conduct and Conviction Is Admissible ........... 2

    A.    Applicable Law ................................................................................................. 3

    B.    Discussion ......................................................................................................... 5

II.    Statements by the Defendants and Their Co-Conspirators Are Admissible at Trial ........... 6

    A.    Applicable Law ................................................................................................. 7

    B.    Discussion ......................................................................................................... 9

CONCLUSION .................................................................................................................. 14

The Government respectfully submits this memorandum of law in support of its motions in limine to admit the following: (1) evidence related to the defendant's receipt of cocaine from Puerto Rico in 2012 and resultant criminal conviction, pursuant to Federal Rule of Evidence 404(b), and (2) statements of defendants and their coconspirators as contained in text messages and video and audio recordings.

## BACKGROUND

The Government expects the trial evidence to prove the following:

Between August 2020 and March 2021, a drug trafficking organization (the "DTO") used the United States Postal Service ("USPS") to deliver dozens of parcels of cocaine from Puerto Rico to the New York City area (the "Parcels"). The Parcels were sent from fictitious names to other fictitious names at addresses controlled by members of the DTO. During the investigation, law enforcement identified approximately 70 Parcels and searched several, each of which contained approximately one to two kilograms of cocaine.

Defendants Pedro Lopez, Giovanni Martinez, and Veronica Nieves were members of the DTO who received and transported Parcels sent to New York City. The DTO sent Parcels to Nieves's apartment in the Bronx (the "Nieves Apartment") addressed to "John Nieves," which is a fictitious name. Surveillance video and law enforcement surveillance show that, when Parcels were delivered to the Nieves Apartment, Nieves would either retrieve the Parcels herself and deliver them to Lopez or Martinez, or she would permit Lopez or Martinez to retrieve them from the parcel locker in her building.

The DTO also sent Parcels to a UPS store location in Manhattan (the "UPS Store").[1] An uncharged coconspirator ("CC-1") was an employee at the UPS Store and ensured that Parcels

---

[1] These Parcels were also sent through USPS, although they were sent to a UPS Store.

sent by the DTO to the UPS Store were safely delivered to a second uncharged coconspirator ("CC-2"). CC-2 would then deliver those Parcels to Lopez or Martinez.

On March 11, 2021, CC-2 retrieved a Parcel from the UPS Store and was thereafter stopped and arrested by law enforcement. CC-2 consented to a search of the Parcel, which was found to contain two bricks of a substance that tested positive for cocaine. At the direction of law enforcement, CC-2 made recorded video and audio calls with Lopez, on which CC-2 and Lopez discussed the delivery of the Parcel from CC-2 to Lopez and Martinez and told Lopez they should meet by the Western Beef supermarket near Lopez's residence. Lopez and Martinez were arrested later that day. Cellphones belonging to Lopez, Martinez, and CC-2 were seized during the investigation, and law enforcement has successfully extracted the contents of the phones belonging to Martinez and CC-2.

At the time Lopez was arrested on the instant offense, he was on supervised release from a prior 96-month sentence for cocaine trafficking imposed in United States v. Lopez, 12 Cr. 307 (SJ) (E.D.N.Y.) (the "EDNY Case"). Like the instant case, Lopez's role in the EDNY Case was to receive kilogram-weight bricks of cocaine transported from Puerto Rico to New York City via common carrier.

## ARGUMENT

**I.  Evidence of Lopez's 2012 Drug Trafficking Conduct and Conviction Is Admissible**

At trial, the Government intends to offer, pursuant to Federal Rule of Evidence 404(b), evidence of the defendant's conviction in 2012 for conspiracy to distribute cocaine and the conduct underlying that conviction. Specifically, the Government intends to prove the following through court transcripts of the defendant's statements at plea and sentencing and the testimony of one or more law enforcement witnesses who participated in the investigation:

2

In April 2012, Lopez and another individual attempted to retrieve two suitcases from the baggage claim area at LaGuardia Airport in New York. Those suitcases had been checked on a flight from Puerto Rico to New York under a ticket purchased in the name of "Henry Rodriguez" but no one boarded the flight using that ticket. Inside the suitcases were bricks containing approximately four kilograms of cocaine. In statements to law enforcement, Lopez admitted that he understood the suitcases contained drugs and that he had received drug shipments on prior occasions. He also admitted that he had recruited the other person who came with him. Law enforcement determined that Lopez had paid for the "Henry Rodriguez" plane ticket and for tickets in the names of other purported passengers who did not board their flights.

For this conduct, Lopez pleaded guilty, in the Eastern District of New York, to conspiracy to distribute cocaine, in violation of violation of 21 U.S.C. §§ 846 and 841b(1)(B). He was sentenced to 96 months' imprisonment and four years of supervised release. Lopez was still on supervised release from his conviction in the EDNY Case at the time of the conduct charged in this case.

### A. Applicable Law

All relevant evidence is admissible, unless otherwise provided. Fed. R. Evid. 401, 402. Relevant evidence of a crime is not limited to "that which directly establishes an element of the crime." United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997). Rather, "the trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment"; such evidence "may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." United States v. Daly, 842 F.2d 1380, 1388 (2d Cir. 1988).

3

Under Federal Rule of Evidence 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The prejudice that Rule 403 refers to is *unfair* prejudice, not merely the prejudice inherent in proving "the fact or issue that justified its admission into evidence"; by definition, "any proof highly probative of guilt is prejudicial to the interests of [the] defendant." United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir. 1995) (citation omitted); see Advisory Committee's Notes on Rule 403 ("'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis commonly, though not necessarily, an emotional one.").

Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The Second Circuit has "adopted an inclusionary approach to evaluating Rule 404(b) evidence, which allows evidence to be received at trial for any purpose other than to attempt to demonstrate the defendant's criminal propensity." United States v. Edwards, 342 F.3d 168, 176 (2d Cir. 2003) (citations omitted).

While any evidence, including evidence offered pursuant to Rule 404(b), is subject to the balancing test set forth in Rule 403, the Second Circuit has long made clear that "other act" evidence that is neither "more sensational" nor "more disturbing" than the charged crimes will not be deemed unfairly prejudicial. United States v. Roldan-Zapata, 916 F.2, 795, 804 (2d Cir. 1990); see also United States v. Williams, 205 F.3d 23, 33-34 (2d Cir. 2000); United States v. Paulino, 445 F.3d 211, 223 (2d Cir. 2006).

Where prior crime evidence is offered to show criminal knowledge or intent, the Government must "identify a similarity or connection between the two acts that makes the prior

4

act relevant to establishing knowledge of the current act." United States v. McCallum, 584 F.3d 471, 475 (2d Cir. 2009) (quotation and citations omitted); see also United States v. Aminy, 15 F.3d 258, 260 (2d Cir. 1994) ("Where, for example, the defendant does not deny that he was present during a narcotics transaction but simply denies wrongdoing, evidence of other arguably similar narcotics involvement may, in appropriate circumstances, be admitted to show knowledge or intent.").

>    B.    **Discussion**

Evidence of the EDNY Case is admissible under Rule 404(b) for multiple purposes, including to show Lopez's knowledge and intent that the Parcels were cocaine shipments, as well as his opportunity to receive kilogram quantities of cocaine from Puerto Rico.

The EDNY Case and the charged offense are similar in numerous respects:

- Drugs were shipped from Puerto Rico to New York City;

- The drugs involved were kilogram-weight bricks of cocaine;

- The drugs were transported using a common carrier;

- The drugs were transported using false identities (in the EDNY Case, fictitious passengers and, in the charged offense, fictitious senders and addressees of the Parcels); and

- Lopez's role was to receive and to recruit others to receive the drug shipments once they arrived in New York City.

The Government expects the only issue to be seriously contested at trial to be Lopez's knowledge and intent: that is, whether he knew that the Parcels contained kilogram bricks of

cocaine.² The fact that, just years before, Lopez had committed an *essentially identical* cocaine trafficking offense—only using airplanes instead of USPS Parcels—and admitted to his knowledge is powerful evidence that he knew what the Parcels contained in the instant case.

The EDNY Case evidence is also admissible to prove Lopez's opportunity to commit the charged offense because it explains how he could have had connections in Puerto Rico with the ability to send many dozens of Parcels—containing many dozens of kilograms of cocaine—to him and his coconspirators in New York.

The substantial similarity between the charged offense and the EDNY Case conduct also means that admission of the EDNY Case evidence will not be unfairly prejudicial. The jury will already be hearing evidence that approximately 70 Parcels were sent in this case, that the Parcels law enforcement opened each contained at least one kilogram of cocaine, and that Lopez and his codefendants received the Parcels in New York. In the context of that record, there is nothing particularly "disturbing" or "sensational" about evidence of the EDNY Case. See Roldan–Zapata, 916 F.2d at 804.

## II.  Statements by the Defendants and Their Co-Conspirators Are Admissible at Trial

At trial, the Government intends to offer evidence of the defendants' statements and the statements of their co-conspirators. Specifically, the Government's evidence will include (a) text messages between and among Lopez, Martinez, CC-1, and CC-2, and (b) recordings of video and telephone calls between Lopez and CC-2. These statements are admissible (i) against the declarant as admissions of a party opponent, see Fed. R. Evid. 801(d)(2)(A); and (ii) against all defendants

---

² The evidence that Lopez received the Parcels from Nieves, Martinez, and CC-2 is overwhelming and will include, among other things, video surveillance of Lopez, law enforcement testimony that Lopez was observed at Parcel pickups, GPS tracker information for Lopez's vehicle, phone records, and recorded video and audio calls between Lopez and CC-2.

6

as co-conspirator statements in furtherance of the conspiracy, see Fed. R. Evid. 801(d)(2)(E). These statements were made during the time period of the charged narcotics conspiracy—that is, from in or about August 2020 up to and including in or about March 2021.

### A.      **Applicable Law**

Federal Rule of Evidence 801(d)(2)(A) provides that a statement made by a party opponent is not hearsay if offered against that party. Accordingly, statements by Lopez, Martinez, or Nieves are not hearsay if offered against their respective declarants.

Rule 801(d)(2)(E) of the Federal Rules of Evidence provides in relevant part that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and was made by the party's co-conspirator during and in furtherance of the conspiracy." To admit a statement under this rule, a district court must find two facts by a preponderance of the evidence: (1) that a conspiracy that included the defendant and the declarant existed; and (2) that the statement was made during the course of, and in furtherance of, that conspiracy. Bourjaily v. United States, 483 U.S. 171, 175 (1987); United States v. Gigante, 166 F.3d 75, 82 (2d Cir. 1999). "In determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself." United States v. Gupta, 747 F.3d 111, 123 (2d Cir. 2014). When determining whether the predicate conspiracy has been established, the district court is not bound by the Rules of Evidence, see Fed. R. Evid. 104(a), and "the district court may consider the hearsay statement itself" as evidence of "the existence of a conspiracy." United States v. Padilla, 203 F.3d 156, 161 (2d Cir. 2000) (citing Bourjaily, 483 U.S. at 181).

To be "in furtherance" of a conspiracy, the statement must in some way have been designed to promote or facilitate achievement of a goal of the ongoing conspiracy. Statements are in

furtherance of the conspiracy if they, for example: (1) inform or provide an update as to the status or progress of the conspiracy, see United States v. Desena, 260 F.3d 150, 158 (2d Cir. 2001); (2) "prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity," United States v. Maldonado-Rivera, 922 F.2d 934, 958 (2d Cir. 1990); (3) "seek to induce a co-conspirator's assistance," Desena, 260 F.3d at 158 (internal quotations omitted); (4) "provide reassurance," id.; (5) "serve to foster trust and cohesiveness," id.; United States v. Simmons, 923 F.2d 934, 945 (2d Cir. 1991); (6) "facilitate and protect" the conspiratorial activities, United States v. Diaz, 176 F.3d 52, 87 (2d Cir. 1999); or (7) inform a co-conspirator of "the identity and activities of his coconspirators," United States v. Rastelli, 870 F.2d 822, 837 (2d Cir. 1989); United States v. Rahme, 813 F.2d 31, 36 (2d Cir. 1987). A narrative description of a past event is admissible as long as it serves "some current purpose in the conspiracy." United States v. Thai, 29 F.3d 785, 813 (2d Cir. 1994); see also Desena, 260 F.3d at 159; Maldonado-Rivera, 922 F.2d at 958; United States v. Flaharty, 295 F.3d 182, 199-200 (2d Cir. 2002).

The fact that one party to the conversation is not a member of the conspiracy, or even a government agent or confidential informant, does not preclude admission of statements by the declarant, as long as the declarant was a member of the conspiracy. See United States v. Rivera, 22 F.3d 430, 436 (2d Cir. 1994) (communications to someone not a member of the conspiracy can be in furtherance of conspiracy's goals); United States v. Farhane, 634 F.3d 127, 160 (2d Cir. 2011) (admitting recorded conversations between co-defendant and a confidential informant); United States v. Hamilton, 597 F. Supp. 2d 407, 410 (S.D.N.Y. 2009) (admitting recordings between defendant and confidential informant).

Finally, because statements to associates about crimes in which the declarant participated are not testimonial, the admission of such statements does not violate the Confrontation Clause

8

or run afoul of Crawford v. Washington, 541 U.S. 36 (2004).  See United States v. Logan, 419 F.3d 172, 178 (2d Cir. 2004) (noting that "[i]n general, statements of co-conspirators in furtherance of a conspiracy are non-testimonial" and are therefore not barred by Crawford); United States v. Williams, 506 F.3d 151, 157 (2d Cir. 2007).

**B.     Discussion**

Texts of relevant communications between and among Lopez, Martinez, CC-1, and CC-2 are admissible in their entirety under Rule 801(d)(2)(A) and 801(d)(2)(E).[3]  Those text communications relate directly to the receipt of the Parcels by participants in the conspiracy or establish the relationships between those conspirators.  Examples of such exchanges appear below.

For example, on November 27 and November 28, 2020, Lopez and CC-2 exchanged text messages regarding two Parcels that had entered the mail stream addressed to "Maria Martinez" at the UPS Store.  "Maria Martinez" was one of the fictitious names used for Parcels sent to that location.  At the time of these communications, law enforcement had diverted one of the Parcels from the mail stream to execute a search warrant.  Upon executing the warrant, law enforcement found a one-kilogram brick of a white substance hidden inside a snack box.  The substance field-tested positive for cocaine.  In order to preserve the integrity of the investigation, law enforcement coded the searched Parcel as "return to sender" in the USPS lookup system.

---

[3]    The exchanges herein were extracted from CC-2's cellphone. The Government learned the passcodes to Martinez's cellphones for the first time last week, has since extracted them, and is undertaking a review of their contents.  The Government expects to finalize its review within the next two weeks.  Based on its review thus far, Martinez's phones appear to have communications (including texts) with coconspirators.  The Government has not yet unlocked Lopez's phones.  Any communications ultimately recovered from Lopez's or Martinez's phones that fall into the coconspirator statement categories discussed in this motion should also be admitted.

9

**Lopez and CC-2**

| November 27, 2020 | |
|---|---|
| Lopez | Maria Martinez<br>They going to deliver it today |
| CC-2 | Can't get that til Tuesday<br>She not gonna be at work til then.  She's off today and comes back Tuesday<br>But it'll be there |
| Lopez | Ok cool |

| November 28, 2020 | |
|---|---|
| CC-2 | Both in the same name ? |
| Lopez | Yea<br>Was the place close today<br>??? |
| CC-2 | She never works Monday bro.  Tomorrow. |
| Lopez | They try to deliver today<br>But they sent it bck to pr<br>Is the place open today |
| CC-2 | It's open on Mondays.  She just don't work Mondays.<br>I thought you said they delivered them ? |
| Lopez | They try to deliver it Saturday<br>Then on Monday |

The text messages below are between CC-2 (who was tasked with picking up Parcels sent to the UPS Store) and CC-1 (the UPS Store employee) regarding the same two Parcels discussed above in the texts with Lopez.  As discussed above, the Parcel that was marked "return to sender" had in fact been searched by law enforcement pursuant to a warrant and found to contain a kilogram of cocaine.

**CC-1 and CC-2**

| December 1, 2020 | |
|---|---|
| CC-2 | I have 2 boxes that are already there for pick up tomorrow<br>Also expecting those 2 cards to be there |
| CC-1 | Yea i got it. Ok cool I'll double check when i get in |
| CC-2 | Cool |
| CC-1 | Gm. Both cards here. What's the name on the boxes |
| CC-2 | Gm. Maria Martinez |
| CC-1 | For both boxes? I only see one |

10

| | |
|---|---|
| CC-2 | Yea for both.  Actually a Tracker was saying that it tried to deliver the other one yesterday and was sent back to sender.  Do you know why that would happen? |
| CC-1 | Not sure because we were open yesterday |

Other text messages that the Government intends to offer relate to the events of March 11, 2021, when CC-2 was arrested and thereafter, at the request of law enforcement, communicated with Lopez and Martinez to arrange to hand off a Parcel that CC-2 had just picked up at the UPS Store.  (That Parcel, addressed to "Mike Cruz," was found to contain approximately two kilograms of a substance that tested positive for cocaine.)  In these messages, CC-2 tells Martinez to meet at the Western Beef supermarket so CC-2 could hand off the Parcel, and the messages reference communications between Martinez and Lopez ("U spoke to him?" "He said u was down town tho").

**Martinez and CC-2**

| March 11, 2021 | |
|---|---|
| CC-2 | Wya bro? |
| Martinez | Good Hood |
| CC-2 | Meet me up by pop crib at western beef U spoke to him ? |
| Martinez | He said u was down town tho |
| CC-2 | I'm headed up there now |

For the same reasons, the Court should admit video and audio recordings of calls that CC-2 had with Lopez about the March 11 handoff.  In those communications, Lopez made clear that he knew what CC-2 was referring to and he told CC-2 that Martinez would meet CC-2 instead.  An excerpt from two such recordings[4] appears below:

---

[4]   The quotations herein are drafts only, and final transcriptions will be produced to the defense once complete.

| March 11, 2021 | |
|---|---|
| CC-2 | Yo bro, you could just uh—so you want me to bring these? Cause I could just bring these and wait for them [U/I]. |
| Lopez | Uh, aight, aight. You gonna do them or you want me to do them? |
| CC-2 | You can, you can do whatever you gotta do with them |

| March 11, 2021 | |
|---|---|
| Lopez | Call G real quick, he gonna, he gonna come scoop that from you. |
| CC-2 | You said G's gonna come scoop it? |
| Lopez | Yeah, and then I just meet him |
| CC-2 | Hold on, I can't hear what you say, what you say? |
| Lopez | G gonna come scoop it, I'll meet you at 8 o'clock, where we said. |

Based on the evidence to be offered at trial, the Government expects to prove that "G" above referred to Giovanni Martinez, the defendant. Following these exchanges, Martinez indeed showed up to the location discussed by Lopez, Martinez, and CC-2 on their various communications.

Lopez's statements are admissible as against him because they are admissions of a party opponent under Rule 801(d)(2)(A). Lopez's statements on these recordings are also admissible against all defendants because they were made in furtherance of the conspiracy: he was trying to coordinate with CC-2 the logistics of picking up the most recent Parcel that had been sent to the UPS Store. While by this time CC-2 was acting at the direction of law enforcement, that fact does not bear on the admissibility of Lopez's statements. See Farhane, 634 F.3d at 160 (holding that conspirator statements to law enforcement informant are admissible); Hamilton, 597 F. Supp. 2d at 410 (same). CC-2's portions of such exchanges should also be admitted, since they are necessary to understand the context in which Lopez made his conspiratorial statements and because CC-2's statements are not being offered for the truth of the matter stated: by this time, CC-2 no longer actually intended to deliver the Parcel to Lopez and Martinez. Instead, CC-2's statements are offered for a non-truth purpose: to make intelligible Lopez and Martinez's

statements in the same exchanges and to explain the significance of Martinez's showing up to the meet location. United States v. Walker, No. 99 CR. 379 (BSJ), 1999 WL 777885, at *4 (S.D.N.Y. Sept. 29, 1999) ("Because the defendant's alleged admissions on the recording are not hearsay, and the statements of the cooperating inmate will be offered, not for their truth, but as context for the defendant's non-hearsay statements, the defendant's hearsay objection to the recording is unfounded." (citation omitted)); United States v. Perez, No. 05 CR. 441 (PKL), 2005 WL 2709160, at *2 (S.D.N.Y. Oct. 20, 2005) ("Because the informant's statements are offered solely to place in context Rivera's statements, which themselves are admissible non-hearsay pursuant to Rule 801(d)(2)(E) as statements by a co-conspirator of a party during the course and in furtherance of the conspiracy, the informant's statements are not hearsay.").

  The examples above are representatives only of the categories of coconspirator statements the Government intends to offer at trial. The Government respectfully submits that other coconspirator statements would be admissible along the same lines if the Government establishes the necessary foundation at trial.

## CONCLUSION

For the reasons set forth above, the Government's motions in limine should be granted.

Dated: New York, New York
September 20, 2021

                                                     Respectfully submitted,

                                                   AUDREY STRAUSS
                                                   United States Attorney for the
                                                   Southern District of New York

By:    /s/ Jun Xiang   
        Jun Xiang / Micah F. Fergenson
        Assistant United States Attorneys
        (212) 637-2289 / -2190